James Alan FARMER,
Petitioner,

v.

W. R. LOVING, Superintendent, etc.,
Respondent.

Civ. A. No. 75–0003.

United States District Court,
W. D. Virginia,
Harrisonburg Division.

March 24, 1975.

James Alan Farmer, pro se.

James W. Hopper, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge.

James Alan Farmer, an inmate at the Augusta Correctional Unit #10, has filed *pro se* a complaint under Title 42 U.S.C. § 1983. Jurisdiction is conferred upon the court pursuant to Title 28 U.S.C. § 1343(3) and (4). The petitioner was allowed by order of the court to pursue this action *in forma pauperis*. Petitioner seeks ten thousand dollars ($10,000) in damages and any appropriate injunctive relief.

Petitioner makes several allegations complaining of his treatment at the Augusta Correctional Unit #10 (hereinafter Unit #10). Petitioner makes six specific allegations:

(1) He was denied writ paper and carbon paper on January 3, 1975;

(2) In December, 1974, a Christmas card to him was refused delivery by respondent;

(3) In a previous suit delivery of legal mail to him was delayed;

(4) He has been denied an equal opportunity to work on the highway crew;

(5) He has been threatened with a punitive transfer; and

(6) He has been denied visitation from ex-inmates.

Respondent has filed a motion for summary judgment attaching his own affidavit and copies of Department of Corrections Guideline No. 801 (revised), and of petitioner's work record at Unit #10.

In his affidavit respondent admits that petitioner was denied writ paper and carbon paper on January 3, 1975, but only because the supply at Unit #10 was temporarily out. Respondent admits that a piece of mail from Pat Woods, a former inmate at Unit #10, to petitioner was returned to Pat Woods undelivered and unopened. Respondent states that he decided to return this piece of mail solely because it bore the return address of Pat Woods, and that pursuant to Guideline 801 (revised) he has found it necessary to curtail personal and written communication between current inmates and former inmates because it allows an unnecessary and dangerous opportunity for illegal transactions. Respondent denies that he in any way delayed petitioner's receipt of de-

fendant's affidavits in a previously filed case. Respondent further states that petitioner is not working on the highway crew because the Virginia Highway Department so requested after petitioner refused a direct order to bury a dead skunk. Respondent denies that he has ever threatened petitioner with transfer for any reason. Finally, respondent admits that he does not allow former inmates to visit current inmates for security reasons and in accordance with Guideline No. 819.

## I

Petitioner's first allegation concerns the denial of writ paper and carbon paper which petitioner feels denied him access to the courts. This court does not agree. As is evident from the fact that the court has before it petitioner's complaint, the denial of writ paper did not deny petitioner access to the court. Although not written upon official writ paper, petitioner's complaint is typed upon the back of other form papers and is as legible and effective as it would be upon official writ paper. Petitioner could have requested from the Clerk of Court a form upon which he could have filed his complaint, but did not do so. The court finds no abridgment of petitioner's constitutional rights by the temporary exhaustion of writ paper at Unit #10.

## II

Petitioner's second allegation relates to respondent's refusal to allow delivery of a piece of mail from Pat Woods in December, 1974. Respondent admits that this was done, but justifies this action on the basis of security and rehabilitation considerations. While petitioner alleges that the item of mail was a Christmas card, respondent has no idea what was contained in the envelope, for it was the return address which determined the piece of mail's exclusion from permitted correspondence with the inmates at Unit #10. Respondent has forbidden all correspondence between recently-discharged inmates and current inmates "because such communication was frequent, and, in affiant's (respondent) opinion, allowed an unnecessary and dangerous opportunity for illegal transactions."

In determining this classification, respondent relied upon Department of Corrections Guideline No. 801 [1] (revised), which sets forth the Correspondence Guidelines. The Correspondence Guidelines allow a certain amount of discretion to the superintendent in enforcing the guidelines, but excludes ex-felons and felon-inmates from corresponding with inmates unless they are "engaged in genuine rehabilitative work or are close relatives."

---

1. Division Guideline No. 801, Page 2, February 22, 1973
   II. *Administration of General Correspondence Privileges*—The Superintendent of each institution is responsible for the guidance and direction of institutional staff in providing correspondence privileges and procedures within Division Guidelines:
   1. Inmates may correspond with anyone they wish. Ex-felons and felon inmates serving sentences are excluded from such correspondence unless they are engaged in genuine rehabilitative work or are close relatives and it is found by the Superintendent to be in the best interest of the inmate and institution to allow such correspondence.
   2. All incoming and outgoing correspondence of general nature will be inspected for contraband but not otherwise read or censored; with the exception that the

Director specifically reserves the right to read for content mail of individual inmates in cases where there is reasonable cause to believe that an individual inmate is using the mails for purposes which directly threaten the security of the institution. The Director shall exercise this right upon written recommendation of an institutional Superintendent, Assistant Director or other proper party. The recommendation shall state the name of the person recommending the censorship and shall state with specificity the grounds for the recommendation.
   3. Individuals confined in isolation are subject to the same mail regulations and privileges as those assigned to the general population except that they may not receive books, magazines or, subject to III(4), the contents of packages until released from isolation.

The Supreme Court put forth a three step analysis of penal regulations covering inmate correspondence in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In determining "the proper standard for deciding whether a particular regulation or practice relating to inmate correspondence constitutes an impermissible restraint of First Amendment liberties", the court held that:

(1) Prison officials must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation;

(2) That the limitation of First Amendment freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved;[2] and,

(3) That the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards. These procedural safeguards require that the inmate be notified of the rejection of a letter written by or addressed to him, that the author of the letter be given a reasonable opportunity to protest the decision to censor or withhold, and that these complaints be referred to a prison official other than the person who originally disapproved the correspondence.[3]

In United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1967), the Supreme Court demonstrated the application of the overbreadth doctrine to the extent that a regulation would be permissible if no alternative means "would more precisely and narrowly" achieve the proper goal. (391 U.S. at 381, 88 S.Ct. 1673).

With *Procunier*, supra, and *O'Brien*, supra, as guidance, the court examines the actions by respondent in refusing delivery of the Christmas card and his reliance upon Division Guideline No. 801 (revised). The court holds that respondent's action worked an abridgement of petitioner's First Amendment rights. The action by respondent failed in two respects to meet the standards set forth in *Procunier*, supra. The court does not question that respondent's action was in furtherance of a legitimate government interest, either security or rehabilitation, but respondent's total prohibition on *all* correspondence between former-inmates and current inmates sweeps entirely too broad, and respondent did not provide adequate procedural safeguards to assure petitioner's rights. No notice of rejection of the Christmas card was given to petitioner nor was the author of the card, Pat Woods, given a reasonable opportunity to protest the prohibition before an official other than the official who rejected the letter at the first instance.

The prohibition on correspondence between former inmates and current inmates is contained in Division Guideline 801 (revised) and this guideline is constitutionally deficient. The court invites the Virginia Department of Corrections to redraft their division guidelines to result in an alternative which would more precisely and narrowly achieve its legitimate interests in order, security, and rehabilitation. The prohibition on all correspondence between ex-felons (except those who are engaged in genuine rehabilitation work or are close relatives) and current inmates is too burdensome a regulation, and, therefore, constitutionally defective. Perhaps, a procedure should be set up which would allow prison officials to

---

2. In underscoring the importance of the second limitation on a prison's right to censor mail the court stated:
   "Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad."

3. While these procedural safeguards were originally required and set forth by the United States District Court for the Northern District of California, the Supreme Court affirmed their necessity and found that they were not unduly burdensome. (416 U.S. at 419, 94 S.Ct. 1800)

carefully scrutinize and screen out correspondence which would cause threats to the legitimate prison interests in order, security, and rehabilitation. Of course, any such procedure must comply with the Supreme Court's directives to allow notice to the inmate and an opportunity to question the decision to the author of the correspondence.

Therefore, this court grants injunctive relief to petitioner and orders the respondent to cease its present prohibition on correspondence between former inmates and current inmates. The court does not question the necessity of censorship and withholding of correspondence when it meets the requisites of *Procunier,* supra, and the respondent should revise its procedures to meet these requirements. Since the damages incurred by petitioner are of a de minimis, degree, the court does not grant any damages.

### III

Petitioner's third allegation concerns the dilatory delivery of affidavits in a previous case brought in this court, James Alan Farmer v. Jack F. Davis, Civil Action No. 74–95, which was dismissed on November 18, 1974. Regardless of whether there was a delay in the delivery of the affidavits, the resulting dismissal would have resulted as petitioner did not allege any constitutional deprivation in the prior suit. Moreover, there are no facts in petitioner's pleadings and affidavit which demonstrate any basis for his allegations. Therefore, the court holds this allegation to be meritless.

### IV

■ Petitioner's fourth allegation concerns his desire to work on the highway crew. Apparently as a result of his refusal to bury a dead skunk, petitioner has been classified as uncooperative and immature. The Highway Department has indicated that it does not feel that petitioner should work on the crew. Petitioner has no constitutional right to work on the highway crew, and in as much as the basis for refusal to permit him to do so is based on a rational basis, no discrimination is therein involved. The court holds that there is no constitutional deprivation involved in this fourth allegation.

### V

■ In his fifth allegation, petitioner claims that respondent threatened to transfer petitioner for filing this present action. Respondent in his affidavit avers that no such threats were made. Since petitioner has not been transferred, and since no factual basis exists for this allegation, the court holds it to be without merit. The court will not brook any interference with petitioner's right to access to the courts, but in the present action no interference has been demonstrated.

### VI

■ Petitioner's final allegation complains that he is not allowed to be visited by former inmates. In Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L. Ed.2d 495 (decided June 24, 1974), the Supreme Court distinguished between visitation and correspondence regulations. The court held that visitation "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to such considerations, courts should ordinarily defer to their expert judgments in such matters". (I.D. at 827). The court finds that no substantial evidence indicating any exaggerated response by the Unit #10 correctional officials has been demonstrated, and, therefore, the court in deference to their professionalism holds that the prohibition on visitation by ex-inmates is constitutionally valid.

### VII

Therefore, the court grants respondent's motion for summary judgment as to all petitioner's allegations except as to

**32**

the second allegation. In accordance with the court's expressed finding that the absolute prohibition on correspondence between ex-inmates and current inmates is unconstitutional, the court enters an order for injunctive relief declaring that the procedure is not to be used in the future. No monetary damages are allowed. Accordingly, the action is dismissed and stricken from the docket.

Petitioner is advised that he may appeal the decision of this court to the United States Court of Appeals for the Fourth Circuit within thirty (30) days.

The clerk is directed to send a certified copy of this opinion and judgment to the petitioner and to counsel for respondent.